842 So.2d 338 (2003)
Shirley Ann GINN
v.
WOMAN'S HOSPITAL FOUNDATION, INC. and
Shirley Ann Ginn,
v.
Woman's Hospital Foundation, Inc., Louisiana Patient's Compensation Fund.
No. 2002-C-1913.
Supreme Court of Louisiana.
April 9, 2003.
*339 William L. Wilson, Taylor, Porter, Brooks & Phillips, for Applicant.
Pater T. Dazzio, Baton Rouge, Watson, Blanche, Wilson & Posner; Keith D. Jones, Baton Rouge, Jones, Aaron & Smith, Michael G. Durand, Lafayette, for Respondent.
KIMBALL, Justice.
We granted certiorari to consider the issue of whether the provisions of La. R.S. 40:1299.44(C) of the Medical Malpractice Act apply when the health care provider, and not its insurer, agrees to settle its liability with claimant and pays plaintiff $100,000.00, and plaintiff demands excess damages from the Patient's Compensation Fund. After examining the plain language of La. R.S. 40:1299.44(C), we conclude its provisions are not applicable, and thus, court approval of the settlement in this case pursuant to that statutory provision was error. Accordingly, under these circumstances, we reverse the judgment of the court of appeal affirming the district court's approval of a settlement pursuant to the provisions of La. R.S. 40:1299.44(C).

Facts and Procedural History
Plaintiff, Shirley Ann Ginn, was hospitalized at Woman's Hospital of Baton Rouge from February 23, 1976 through March 1, 1976. During that hospitalization, she received *340 a blood transfusion. On March 26, 1997, plaintiff was diagnosed with hepatitis C. Thereafter, on March 18, 1998, plaintiff filed suit against Woman's Hospital Foundation, operating as Woman's Hospital of Baton Rouge (hereinafter "the Hospital"), seeking strict tort products liability recovery for damages sustained from the contaminated blood.
In response to plaintiff's petition, the Hospital filed a dilatory exception of prematurity.[1] In this exception, the Hospital argued plaintiff's suit should be dismissed because La. R.S. 40:1299.41 et seq., the Medical Malpractice Act ("MMA"), requires a claimant to convene a medical review panel prior to instituting suit in district court. The district court denied the Hospital's exception of prematurity based on this court's previous decision in Branch v. Willis-Knighton Med. Ctr., 92-3086 (La.4/28/94), 636 So.2d 211. On appeal, the court of appeal affirmed the judgment of the district court, finding plaintiff's claims were not governed by the MMA. Ginn v. Woman's Hosp. Found., Inc., 99-1691 (La.App. 1 Cir. 9/22/00), 770 So.2d 428. This court denied the Hospital's application for certiorari. Ginn v. Woman's Hosp. Found., Inc., 00-3397 (La.2/2/01), 784 So.2d 647.
On November 28, 2000, plaintiff amended her petition to allege that she was again hospitalized at Woman's Hospital on January 5, 1983, and received another blood transfusion during that hospitalization. Additionally, plaintiff added paragraph 5A to her petition to include allegations of negligence and lack of informed consent arising from both transfusions as follows:

5A.
Prior to the transfusions received by your petitioner from defendant in 1976 and 1983, defendant failed to meet the applicable standard of care in its processing and administration of the blood in the following respects:
a. Defendant failed to advise your petitioner of the dangers associated with the administration by transfusion of whole blood, and particularly failed to advise your petitioner that the blood could be contaminated with the virus known at that time as hepatitis, non-A and non-B;
b. Defendant failed to secure your petitioner's informed consent for the transfusion procedures;
c. Despite the fact that it knew that units of blood which showed elevated liver enzyme levels of SGOT and SGPT were more likely to be infected with hepatitis, non-A, non-B than were units of blood not tested for those liver enzyme levels, defendant nevertheless failed to test the units of blood administered to your petitioner for elevated liver enzymes.
Subsequently, plaintiff and the Hospital agreed to settle the suit, and petitioned the district court for judicial approval of the settlement pursuant to the provisions of the MMA. According to plaintiff's Petition for Court Approval of Settlement of a Medical Malpractice Claim with Reservation of Rights Against the Louisiana Patient's Compensation Fund to Determine Excess Damages Pursuant to LSA-R.S. 40:1299.44(C), the Hospital agreed to pay plaintiff $100,000, thereby fully releasing it from any further liability to plaintiff pursuant to the MMA. Additionally, plaintiff demanded the payment of additional damages from the Louisiana Patient's Compensation *341 Fund under the provisions of La. R.S. 40:1299.44(C) of the MMA.
After receiving notice of the proposed settlement, the Louisiana Patient's Compensation Fund Oversight Board and the Louisiana Patient's Compensation Fund (collectively "the Fund") filed a petition of intervention opposing the settlement. In its petition of intervention, the Fund argued the benefits afforded by the MMA do not apply to plaintiff's claim because the Hospital did not pay the Fund the required surcharge, and the Hospital is therefore not a qualified health care provider. Additionally, the fund contended the court of appeal had already ruled that plaintiff's claim was not covered by the MMA.
A hearing on plaintiff's petition for court approval of the settlement was held on January 30, 2001. After considering the testimony and evidence presented, the district court orally granted plaintiff the authority to settle with the Hospital pursuant to the provisions of the MMA. A written judgment was signed by the district court, which stated:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment approving the settlement by and between the plaintiff, Shirley Ann Ginn and defendant, Woman's Hospital Foundation, Inc., pursuant to the provisions of La. R.S. 40:1299.44(C)(4) authorizing and requiring the payment of ONE HUNDRED THOUSAND AND NO/100 ($100,000.00) DOLLARS by Woman's Hospital Foundation, Inc. to plaintiff, and also requiring plaintiff to execute release and dismissal documents consistent with the settlement agreement;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liability for damages as alleged in the original and First Supplemental and Amending Petitions filed by plaintiff of Woman's Hospital Foundation, Inc., and the Patient's Compensation be, and it is hereby deemed established and admitted pursuant to La[.] R.S. 40:1299.44(C)(5) for the damages suffered by plaintiff herein as alleged in the original and first supplement[al] and amending petitions subject to a credit in favor of the Patient's Compensation Fund in the amount of $100,000.00 dollars representing the amount paid by Woman's Hospital Foundation, Inc.;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff is hereby granted the right to seek additional damages from the Patient's Compensation Fund for those damages in excess of $100,000.00 dollars which she has suffered as a result of the injuries alleged in her original and First Supplemental and Amending Petitions.
On appeal, the court of appeal affirmed the judgment of the district court approving the proposed settlement between plaintiff and the Hospital pursuant to the provisions of La. R.S. 40:1299.44(C).[2]Ginn v. Woman's Hosp. Found., Inc., 01-1194 (La. App. 1 Cir. 5/10/02), 818 So.2d 983. In *342 reaching its decision, the court of appeal first determined the statutory procedures required by La. R.S. 40:1299.44(C) were satisfied by the parties. The court of appeal then determined that the Hospital was a qualified health care provider and therefore concluded there was no error in the district court's approval of the settlement.
We granted certiorari to review the decision of the court of appeal and specifically to consider whether the requirements of La. R.S. 40:1299.44(C) were satisfied in this case. Ginn v. Woman's Hosp. Found., Inc., 02-1913 (La.11/1/02), 828 So.2d 580.

Discussion
The Fund argues that the lower courts erred in approving the proposed settlement in this case under the provisions of La. R.S. 40:1299.44(C) because those provisions contemplate participation and payment of the settlement only by the insurer of the health care provider or a self-insured health care provider. After careful consideration of the arguments made by the plaintiff, the Hospital, and the Fund and the language of La. R.S. 40:1299.44(C) itself, we agree that the lower courts erred in approving the settlement pursuant to the provisions of La. R.S. 40:1299.44(C), in considering the liability for damages as alleged in both of plaintiff's petitions of the health care provider as admitted and established pursuant to the provisions in La. R.S. 40:1299.44(C)(5), and in granting plaintiff the right to seek excess damages arising out of the allegations in plaintiff's original and supplemental petitions from the Fund.
As an initial matter, we note the judgment of the district court, which was affirmed by the court of appeal, makes the Fund liable to plaintiff for excess damages arising from claims alleged in both her original and supplemental petitions. However, there has previously been a judicial determination that the strict liability claims asserted in plaintiff's original petition for damages arose prior to the time the MMA encompassed blood-related defects, and, therefore, those claims are not governed by the MMA. See Ginn v. Woman's Hosp. Found., Inc., 99-1691 (La.App. 1 Cir. 9/22/00), 770 So.2d 428, writ denied, 00-3397 (La.2/2/01), 784 So.2d 647. The MMA itself provides that the Fund is not liable for any sums "except for those arising from medical malpractice." La. R.S. 40:1299.41(I). Because it has previously been judicially determined that the claims asserted in plaintiff's original petition are not medical malpractice claims, the Fund may not be held liable for any damages arising out of the claims alleged in plaintiff's original petition. Thus, although the plaintiff and the Hospital are free to settle the claims asserted in the original petition as they wish, the district court erred in including these claims in any ruling adverse to the Fund.
Plaintiff's supplemental and amending petition alleges the Hospital breached the appropriate standard of care in administering the 1983 transfusion.[3] The parties do not appear to dispute that the claims regarding the 1983 transfusion are covered *343 under the provisions of the MMA. In her petition for court approval of the settlement, plaintiff requested that the settlement be approved under the provisions of La. R.S. 40:1299.44(C) such that the Hospital would pay her $100,000.00 in return for a full release. Plaintiff demanded excess damages in the amount of $400,000.00 plus interest and medical expenses from the Fund pursuant to La. R.S. 40:1299.44(C). Additionally, plaintiff alleged she properly served the Patient's Compensation Fund Oversight Board and the Hospital in accordance with the provisions of La. R.S. 40:1299.44(C)(2).
The provisions of La. R.S. 40:1299.44(C) set forth the procedure that must be followed when the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an additional amount of damages from the Fund for a complete and final release. La. R.S. 40:1299.44(C). This court has previously held that a claimant who desires excess recovery from the Fund must closely follow the procedures of La. R.S. 40:1299.44(C) when requesting court approval of a settlement. Horil v. Scheinhorn, 95-0967 (La.11/27/95), 663 So.2d 697. The procedure to be followed begins with the claimant filing a petition (a) seeking approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the Fund. La. R.S. 40:1299.44(C)(1). A copy of the petition must be served on the board, the health care provider and his insurer at least ten days before filing and must contain sufficient information to inform the other parties about the nature of the claim and the additional amount demanded. La. R.S. 40:1299.44(C)(2). The board and the insurer of the health care provider or the self-insured health care provider, as the case may be, may agree to a settlement with the claimant from the Fund or may file written objections to the payment of the amount demanded. La. R.S. 40:1299.44(C)(3). The agreement or the objections to the payment demanded must be filed within twenty days after the petition is filed. Id. The matter is then fixed for hearing by the court, and the court must notify the claimant, the board and the insurer of the health care provider or the self-insured health care provider, as the case may be. La. R.S. 40:1299.44(C)(4).
At the hearing, the board, the claimant, and the insurer of the health care provider or the self-insured health care provider, as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. La. R.S. 40:1299.40(C)(5). If the board, the insurer of the health care provider or the self-insured health care provider, as the case may be, and the claimant cannot agree on the amount, if any, to be paid from the Fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. Id. The court shall determine the amount for which the Fund is liable and render a finding and judgment accordingly. Id. In approving a settlement or determining the amount, if any, to be paid from the Fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars. Id.
Finally, for the benefit of both the insured and the Fund, the insurer of the health care provider has a duty to exercise good faith and reasonable care both in evaluating the plaintiff's claim and in considering *344 and acting upon the settlement. La. R.S. 40:1299.44(C)(7). For the benefit of the Fund, a self-insured health care provider has a duty to exercise good faith and reasonable care both in evaluating plaintiff's claim and in considering and acting upon the settlement. Id.
When a law is clear and unambiguous and the application of the law does not lead to absurd consequences, the law must be applied as written without any further interpretation of the intent of the legislature. La. C.C. art. 9. Accordingly, the starting point for the interpretation of any statutory provision is the language of the provision itself. Dumas v. State, 02-0563 (La.10/15/02), 828 So.2d 530.
The language of La. R.S. 40:1299.44(C) clearly states that the procedures outlined in its provisions apply when the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability with the claimant and the claimant is demanding an amount in excess of the settlement from the Fund for a complete and final release. Moreover, subsection 1299.44(C) consistently and solely indicates the participants in the court approval of the settlement provided for under its provisions are to be the insurer of the health care provider or the self-insured health care provider, the claimant, and the board. La. R.S. 40:1299.44(C)(5) clearly contemplates the involvement of the insurer, rather than the health care provider, in the hearing for court approval of the settlement as it provides only that the board, the claimant, and the insurer of the health care provider (or the self-insured health care provider) may introduce relevant evidence before the court. Finally, section 1299.44(C)(5) explicitly provides that the liability of the health care provider shall be considered as admitted and established where the insurer has paid its policy limits of $100,000.00 or the self-insured health care provider has paid $100,000.00. After considering these provisions, we find the plain language of La. R.S. 40:1299.44(C) is clear, unambiguous, and does not lead to absurd consequences. Consequently, we conclude La. R.S. 40:1299.44(C) applies only when the insurer of the health care provider or the self-insured health care provider agrees to settle its liability on the claim against its insured and claimant demands excess damages from the Fund.
We recognize that because the MMA is special legislation in derogation of the rights of tort victims, it must be strictly construed against limiting the victim's rights against the tortfeasor. Spradlin v. Acadia-St. Landry Med. Found., 98 1977 (La.2/29/00), 758 So.2d 116; Branch v. Willis-Knighton Med. Ctr., 92-3086 (La.4/28/94), 636 So.2d 211; Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992). However, we cannot ignore the clear statutory mandate imposed by the legislature under the guise of following such a principle. There is simply no other way to reasonably construe the plain language of the statute. Therefore, as we have done in previous medical malpractice cases, see e.g., Russo v. Vasquez, 94-2407 (La.1/17/95), 648 So.2d 879; Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990), we have closely examined the language of the provision at issue to resolve this case.
Our conclusion that the plain language of the statute, which requires that the insurer of the health care provider, or the self-insured health care provider, participate in the settlement, should be applied as written is further bolstered by the provisions of La. R.S. 40:1299.42(D)(5). This section, which is part of the MMA dealing with limitation of recovery, provides that in the event a partial settlement is executed *345 "between the defendant and/or his insurer with a plaintiff" for $100,000.00 or less, written notice of the settlement shall be sent to the board. Additionally, it provides that such a settlement shall not bar the continuation of the action against the Fund for excess sums "in which event the court shall reduce any judgment to the plaintiff in the amount of malpractice liability insurance in force as provided for in R.S. 40:1299.42(B)(2)." La. R.S. 40:1299.42(D)(5) clearly contemplates a partial settlement between the health care provider and/or his insurer with the plaintiff. Obviously, then, the legislature made a distinction between a settlement involving only the insurer of a health care provider or a self-insured health care provider and the plaintiff under La. R.S. 40:1299.44(C) and one involving a health care provider and/or his insurer and the plaintiff under La. R.S. 40:1299.42(D)(5). We, in turn, must interpret the language of the statute at issue as clearly written.
In the instant case, plaintiff's petition for court approval of the settlement indicates the Hospital itself, and not its insurer, agreed to pay plaintiff $100,000.00 in exchange for a full release. Additionally, the district court's judgment indicates the Hospital is required to pay $100,000.00 under the terms of the settlement. The parties do not dispute that the Hospital is the entity making the payment. Similarly, it is undisputed that the Hospital is not a self-insured health care provider. In light of the plain language of La. R.S. 40:1299.44(C), we are forced to conclude that because the insurer of the Hospital did not agree to settle the claim and did not pay its policy limits of $100,000.00, the provisions of La. R.S. 40:1299.44(C) are inapplicable in this situation.
Construing the statute as limiting the applicability of La. R.S. 40:1299.44(C) to situations in which the insurer of the health care provider or the self-insured health care provider agrees to the settlement and actually pays the sum of $100,000.00 does not lead to absurd consequences. La. R.S. 40:1299.44(C)(5), which provides that payment by the insurer or the self-insured health care provider of $100,000.00 in settlement of plaintiff's claim constitutes an admission of the liability of the health care provider, contains perhaps the only benefit that medical malpractice victims derive from the MMA. Graham v. Willis-Knighton Med. Ctr., 97-0188 (La.9/9/97), 699 So.2d 365. This benefit is offset by the requirement in La. R.S. 40:1299.44(C)(7) that the insurer is burdened with a duty for the benefit of both the insured and the Fund to exercise good faith and reasonable care both in evaluating plaintiff's claim and in considering and acting upon the settlement. By making the medical malpractice victim's benefit contingent upon participation in the settlement by the insurer, who is bound to act reasonably and in good faith for the benefit of others, the possibility of collusion between the health care provider and the claimant to unfairly involve the Fund in situations in which it may not be liable is eliminated.
The Fund seems to argue that in the absence of plaintiff's strict compliance with the provisions of La. R.S. 40:1299.44(C), there are no other provisions in the Act under which it can be made to pay excess damages when the plaintiff settles with the health care provider. According to the Fund, La. R.S. 40:1299.42(D)(5) is inapplicable because of this court's holding in Horil v. Scheinhorn, 95-0967 (La.11/27/95), 663 So.2d 697. In Horil, we held that where the claimant expects to ultimately recover from the Fund despite his settlement of the provider's liability, the provisions of La. R.S. 40:1299.44(C), rather than those of La. R.S. 40:1299.42(D)(5), must be closely followed. *346 Horil, however, is distinguishable from the instant case because the applicability of La. R.S. 40:1299.44(C) was never questioned in that case. When the provisions of La. R.S. 40:1299.44(C) are inapplicable as they are in this case, it remains to be seen whether the provisions of La. R.S. 40:1299.42(D)(5) come into play. We need not address this issue at this time, however, because the parties have not raised it and the district court's judgment in this case is specifically limited to the provisions of La. R.S. 40:1299.44(C).
Finally, we must note that in discussing the settlement provisions of La. R.S. 40:1299.44(C), this court has sometimes referred to the health care provider as being the settling party. See, e.g., Graham, supra; Horil, supra. We find this language is not controlling as it was used in cases in which the applicability of the provisions of La. R.S. 40:1299.44(C) was not at issue. Accordingly, we do not view these decisions as requiring a contrary result.
Having resolved the issue presented in the manner explained above, we find it unnecessary to address the Fund's remaining assignments of error.

Decree
For the above reasons, we conclude the provisions of La. R.S. 40:1299.44(C) are inapplicable to the instant case. Accordingly, we find the court of appeal erred in affirming the district court's judgment approving the settlement pursuant to the provisions of La. R.S. 40:1299.44(C), finding the liability of the health care provider admitted and established pursuant to La. R.S. 40:1299.44(C)(5), and granting plaintiff the right to seek excess damages from the Fund pursuant to La. R.S. 40:1299.44(C). The judgments of the lower courts approving the settlement are reversed, and this case is remanded to the district court for proceedings not inconsistent with the opinion expressed herein.
REVERSED and REMANDED.
NOTES
[1] The Hospital also filed an exception of prescription, which was denied by the district court. The judgment relating to the Hospital's exception of prescription is not before us in this case.
[2] Following the district court's judgment, the Fund filed both an application for supervisory writs and a devolutive appeal in the court of appeal. The Hospital filed a motion to dismiss the Fund's devolutive appeal, citing La. R.S. 40:1299.44(C)(6), which provides that "[a]ny settlement approved by the court shall not be appealed." The court of appeal referred the motion to dismiss and the writ application to the merits. Subsequently, the court of appeal denied the Hospital's motion to dismiss the appeal, denied the Fund's application for supervisory writs, and treated the case as a devolutive appeal. Ginn v. Woman's Hosp. Found., Inc., 01-1194 (La. App. 1 Cir. 5/10/02), 818 So.2d 983. Because neither the Hospital nor the plaintiff sought a writ of certiorari from this court on this issue, we express no opinion regarding the propriety of the appeal.
[3] The supplemental and amending petition also alleges the Hospital breached the applicable standard of care in the processing and administration of the blood during her 1976 transfusion. The issue of whether these claims are covered by the provisions of the MMA has not been explicitly addressed by the lower courts. Because we conclude herein that the district court erred in approving the settlement under the provisions of La. R.S. 40:1299.44(C) and therefore reverse its judgment on these grounds, we need not consider whether the additional claims arising out of the 1976 transfusion alleged in plaintiff's supplemental and amending petition are covered under the provisions of the MMA.